Spain, J.P.
Appeal from an order of the Supreme Court (Krogmann, J.), entered September 30, 2011 in Warren County, upon a decision of the court in favor of plaintiffs.
*1157 Pursuant to a January 1, 2003 written loan agreement by which defendant and his two business partners, Richard Norelli and Scott Newell, personally guaranteed the loan, plaintiffs invested $300,000 in a residential rehabilitation and marketing corporation known as Rehab America, Inc. By the end of the year, however, Rehab America was failing, prompting defendant and his partners to offer plaintiffs a proposal to settle the outstanding obligation. In a letter dated December 26, 2003, after explaining the dire financial situation facing Rehab America, Norelli proposed a settlement whereby plaintiffs would be paid $100,000 cash, to be obtained by each of the three partners refinancing their own homes, and an additional $100,000 to be paid from the projected proceeds of the anticipated sales of two remaining properties held by Rehab America.
Thereafter, plaintiffs received $96,200 in cash from the partners.* Unfortunately, the sale proceeds from the remaining two properties did not meet expectations, and plaintiffs received payments of $21,638.39 and $27,395.95, representing the proceeds of each sale, consummated only after a protracted struggle to market the properties. Plaintiffs thereafter commenced this action, acknowledging their agreement to accept $200,000 in satisfaction of the debt and seeking the shortfall of $54,765.66. Plaintiffs moved for summary judgment and Supreme Court found, as a matter of law, that plaintiffs accepted the settlement as proposed by Norelli’s December 26, 2003 letter, resulting in a “novation” of the original loan agreement, but denied summary judgment finding a question of fact as to whether plaintiffs were guaranteed the full $200,000 settlement or had agreed to accept $100,000 in cash plus the proceeds of the house sales, whatever those sales might yield. Following a nonjury trial, however, the court, noting that the original loan agreement required that any modification to the agreement must be made in writing executed by both parties and that the December 23, 2003 letter was never executed by plaintiffs, found that the letter did not modify or supplant the original contract. Alternatively, the court rejected Norelli’s position that plaintiffs agreed to accept $100,000 plus whatever amount the sale of the properties yielded, finding that, under the terms of the letter, plaintiffs were entitled to the full $200,000 settlement. The court entered judgment in favor of plaintiffs. Defendant appeals, and we now affirm.
*1158 We hold, consistent with Supreme Court’s original decision on this issue, that the December 26, 2003 letter modified the original loan agreement. There can be no dispute that a settlement was reached; indeed, plaintiffs’ complaint states that they accepted a proposed settlement of $200,000 and plaintiffs have consistently acknowledged as much. Further, in his affidavit in support of plaintiffs’ motion for summary judgment and in his testimony at trial, plaintiff William L. Bitner III clearly admits that plaintiffs agreed to accept a settlement, citing Norelli’s December 26, 2003 letter as evidence of the settlement amount. Given Bitner’s admission to the existence of the settlement and reliance on the letter for its terms, the court’s application of the Statute of Frauds and resultant determination that Norelli’s letter did not modify the original agreement was in error (see Dzek v Desco Vitroglaze of Schenectady, 285 AD2d 926, 927 [2001]).
We turn then to the factual issue of whether, pursuant to the terms of the letter, plaintiffs were promised a full $200,000, regardless of the success of the plan to raise that much, or instead whether they agreed to accept the proceeds of the sale of the two properties, whatever they might yield. We are “empowered in reviewing the decision rendered following a nonjury trial to independently consider the probative weight of the evidence and the inferences to be drawn therefrom” (Dzek v Desco Vitroglaze of Schenectady, 285 AD2d at 926), while according deference to Supreme Court’s credibility determinations (see Chase Manhattan Bank v Douglas, 61 AD3d 1135, 1136 [2009]).
In describing the sources of funds that the partners proposed to use to raise the settlement amount, the letter states that $100,000 would be obtained from the sale of the two remaining Rehab America properties. Although that anticipated figure was clearly a projection, in describing the settlement proposal the letter goes on to state: “Combining the $100,000 from the sale of the two remaining properties, $100,000 in personal cash from the three partners . . . and distributions to date [in interest and profit in the amount of $138,000] will yield a total final settlement to you of $338,000” (emphasis added). Given this unequivocal language and plaintiffs’ consistent position that they agreed to no less than $200,000 in settlement, we find the judgment supported by the record evidence.
McCarthy, Garry and Egan Jr., JJ, concur.
Ordered that the order is affirmed, with costs.

 Norelli testified that he was only able to secure $46,200. Newell paid $50,000 to plaintiffs. Pursuant to the plan described in the December 26, 2003 letter, defendant was to obtain $50,000 to settle with another investor. Defendant testified at trial that he settled the debt to the other investor for $25,000.